UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**DANIEL R. CLEMANS**                                                                  **PLAINTIFF**

**v.**                                              **CIVIL ACTION NO. 3:24-CV-P334-JHM**

**J. SCARBOROUGH** *et al.*                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This is a *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for screening pursuant to 28 U.S.C. § 1915A. For the reasons set forth below, the Court will dismiss some of Plaintiff's claims and allow others to proceed.

**I.**

Plaintiff Daniel R. Clemans states that he was incarcerated as a pretrial detainee at Meade County Detention Center (MCDC) from January 12, 2022, until January 26, 2024, and that he was then incarcerated there as a convicted prisoner until the time he filed this action. Plaintiff brings this action against MCDC Jailer J. Scarborough, MCDC Assistant Jailer Brandon Finch, MCDC Nurse Amber Brown, MCDC official Rebecca Webster, and former Meade County Sheriff's Deputy Bryan Pesis. Plaintiff sues these Defendants in both their official and individual capacities alleging that they have violated his constitutional rights. As relief, Plaintiff seeks damages and injunctive relief.

**II.**

Because Plaintiff is a prisoner seeking relief against governmental entities, officers, and/or employees, this Court must review the instant action under 28 U.S.C. § 1915A. Under § 1915A, the trial court must review the complaint and dismiss the complaint, or any portion of the complaint, if the court determines that it is frivolous or malicious, fails to state a claim upon which

relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); and *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *See Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). The Court's duty "does not require [it] to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), or to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

"Section 1983 creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint ex rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351

(6th Cir. 2001). Two elements are required to state a claim under § 1983. *Gomez v. Toledo*, 446 U.S. 635 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

### A. Official-Capacity Claims

"Official capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Thus, Plaintiff's official-capacity claims against Defendants are actually against their employer, Meade County. A municipality such as Meade County cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)). In the instant case, Plaintiff does not allege that any constitutional violation occurred pursuant to a policy or custom of Meade County. Thus, Plaintiff's official-capacity claims must be dismissed for failure to state a claim upon which relief may be granted.

### B. Individual-Capacity Claims

#### 1. Jailer J. Scarborough

Plaintiff states that Defendant Scarborough was elected and placed in charge of MCDC by Meade County. He states that Defendant Scarborough "knowingly delegated specific tasks he is

responsible for, by policy, to [Defendant Finch] and others [and] he directly violates municipal policy and contributes to unconstitutional customs causing harm to Plaintiff . . . . [His] individual decisions and . . . policy violations directly show he knowingly acted unconstitutionally while attempting to cloak himself from harmful acts of others."

The Court first observes that the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[P]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id.* at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Here, Plaintiff simply asserts that Defendant Scarborough acted "unconstitutionally" and contributed to "unconstitutional customs." These allegations are too vague and conclusory to state a claim upon which relief may be granted.

And to the extent that Plaintiff alleges that Defendant Scarborough violated MCDC policy by delegating certain tasks to Defendant Finch and other officers, this allegation also fails to state a claim upon which relief may be granted. This is because the "failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995); *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) ("It has long been established that the violation of a state statute or regulation is insufficient alone to make a

claim cognizable under § 1983."); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 578 (6th Cir. 2004) ("[S]tate law, by itself, cannot be the basis for a federal constitutional violation.").

Thus, Plaintiff's claims against Defendant Scarborough will be dismissed for failure to state a claim upon which relief may be granted.

### 2. Deputy Jailer Finch

Plaintiff alleges that Defendant Finch intercepts every grievance and request he sends to Jailer Scarborough. Plaintiff also alleges that Defendant Finch retaliates against him for filing grievances by "moving him from cell to cell" and "losing my outgoing mail." Plaintiff states that Defendant Finch makes threats against him and alters the MCDC Handbook. Plaintiff further states that Finch has lost his mail several times causing "irreparable harm in Plaintiff's court proceedings causing Motion to Dismiss Grounds As Moot." Plaintiff additionally alleges that Defendant Finch opens his legal mail, refuses to notarize documents, and refuses to make copies of legal documents for court. Finally, Plaintiff also states that Defendant Finch has denied his attorney's visits on three occasions and denied him "clergy visits + religious material."

### a. Legal Mail

At this preliminary stage, <u>the Court will allow a First Amendment claim to proceed against Defendant Finch based upon Plaintiff's allegations that he repeatedly lost and opened Plaintiff's legal mail</u>.

### b. Grievances

Plaintiff's claim that Defendant Finch "intercepted" all of his grievances must be dismissed because it fails to state a claim upon which relief may be granted. This is because prisoners do not possess a constitutional right to a grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) ("All circuits to consider this issue have . . . found that there is

no constitutionally protected due process right to unfettered access to prison grievance procedures."); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure").

### c. Retaliation

The Court next addresses Plaintiff's claim that Defendant Finch retaliated against him for filing grievances by "moving him from cell to cell" and "losing my outgoing mail." To succeed on a First Amendment retaliation claim, a plaintiff must show that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

Here, even if the Court assumes that the Plaintiff's allegations satisfy the first and second prongs of the above standard, his retaliation claim still fails because the complaint contains *no* allegations in support of the third prong (motive). "[R]etaliation 'rarely can be supported with direct evidence of intent.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)). A plaintiff may rely on circumstantial evidence, but must still provide "specific, nonconclusory allegations" linking his conduct to a defendant's retaliatory act. *Spencer v. City of Catlettsburg*, 506 F. App'x 392, 396 (6th Cir. 2012). "[C]onclusory allegations of retaliatory motive 'unsupported by material facts'" will not suffice. *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (requiring "concrete and relevant particulars"). A plaintiff may allege a chronology of events from which a defendant's

6

retaliatory animus could reasonably be inferred. *Manning v. Bolden*, 25 F. App'x 269, 272 (6th Cir. 2001) (citations omitted). Other evidence courts examine to determine causation include statements by defendants or the disparate treatment of other prisoners. *Hill v. Lappin*, 630 F.3d 468, 476 (6th Cir. 2010); *see also Patterson v. Godward*, 370 F. App'x 608, 610 (6th Cir. 2010).

Here, the complaint does not contain allegations of temporal proximity or disparate treatment. Plaintiff has only provided conclusory allegations of retaliatory motive and has not provided any evidence - direct or circumstantial - in support. "By 'merely alleg[ing] the ultimate fact of retaliation,' Plaintiff's argument for causation, and thus for actionable retaliation, fails." *Flournoy v. Hemingway*, No. 20-13130, 2021 U.S. Dist. LEXIS 93709, at *22 (E.D. Mich. May 18, 2021) (quoting *Murray*, 84 F. App'x at 556).

Thus, the Court will dismiss Plaintiff's retaliation claim against Defendant Finch for failure to state a claim upon which relief may be granted.

### d. Denial of Access to the Courts

The Court next considers what it construes as a claim against Defendant Finch for denial of access to the courts based upon Plaintiff's allegations that Defendant Finch lost his legal mail, refused to notarize documents for him, refused to make copies of court documents for him, and that these actions caused a motion he filed to be denied as moot.

The right of access to the courts guaranteed by the First Amendment "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). However, a "prisoner's right of access to the courts is fully protected if he is represented by counsel." *Resch v. Washington*, No. 1:21-cv-293, 2022 U.S. Dist. LEXIS 71727, at *23 (W.D. Mich. Apr. 19, 2022) (citing *Skelton v. Pri-Cor, Inc.*, 963

7

F.2d 100, 104 (6th Cir. 1991); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)(citing *Holt v. Pitts*, 702 F.2d 639, 640 (6th Cir. 1983)) (holding that, once counsel has been appointed, the state has fulfilled its constitutional obligation to provide access to the courts)). Thus, because it is clear from the complaint that Plaintiff had counsel during his state-court criminal proceedings, his claim for denial of access to the courts fails.

### e. Right to Counsel

The Court next turns to Plaintiff's allegation that Defendant Finch denied him the right to meet with his attorney on three occasions. The Sixth Amendment provides that "[in] all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "This right includes the right to communicate with one's criminal-defense attorney while confined awaiting trial." *Thompson v. Causey*, No. 1:17-CV-P12-GNS, 2017 U.S. Dist. LEXIS 58656, at *3 (W.D. Ky. Apr. 18, 2017) (citing *Maine v. Moulton*, 474 U.S. 159, 170 (1985)). "Access to courts and counsel, however, need not be more than 'reasonable.'" *Woods v. St. Louis Just. Ctr.*, No. 406-CV-233 CAS, 2007 U.S. Dist. LEXIS 60993, at *32 (E.D. Mo. Aug. 20, 2007) (citing *Lewis v. Casey*, 518 U.S. 343, 350-351 (1996) (holding that the Constitution does not mandate use of any particular method for providing access to courts or counsel)); *see also Weatherford v. Bursey*, 429 U.S. 545, 558 (1977). "For example, courts have rejected claims such as being denied telephone use for certain periods of time, so long as the detainee 'had other reasonable means to contact his or her attorney and where no prejudice resulted.'" *Mallory v. Miller*, No. 3:20-CV-P249-RGJ, 2021 U.S. Dist. LEXIS 47989, at *12-13 (W.D. Ky. Mar. 15, 2021) (quoting *Stamper v. Campbell Cnty., Ky.*, No. 2007-49 (WOB), 2009 U.S. Dist. LEXIS 63958, at *4 (E.D. Ky. July 24, 2009)); *see also Uraz v. Ingham Cnty. Jail*, No. 1:19-CV-550,

2019 U.S. Dist. LEXIS 155252, at *26 (W.D. Mich. Sept. 11, 2019) ("Plaintiff utterly fails to allege facts demonstrating that he had no other means of communicating with his attorney . . . .").

Thus, because Plaintiff does not allege that he could not communicate with this attorney through visits other than the three that were allegedly denied, or by telephone, this claim must also be dismissed for failure to state a claim upon which relief may be granted.

### f. Alteration of Handbook

Plaintiff's allegation that Defendant Finch failed to follow, or altered, the MCDC Handbook must also be dismissed for failure to state a claim upon which relief is granted. As stated above, the "failure of prison officials to follow institutional procedures or policies does not give rise to a constitutional claim." *Sandin*, 515 U.S. at 481-82; *see also Vining*, 602 F.3d at 769.

### g. Verbal Threats

The Court next turns to Plaintiff's vague allegation that Defendant Finch threatened him. The Sixth Circuit has held that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th. Cir. 2012); *see also Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (holding that the use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions). Thus, this claim also fails to state a claim upon which relief may be granted.

### h. Denial of Clergy Visits and Religious Materials

As to Plaintiff's final claim against Defendant Finch, "[p]risoners retain the First Amendment right to the free exercise of their religion." *Hayes v. Tenn.*, 424 F. App'x 546, 549 (6th Cir. 2011) (citing *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985)). A violation of the First Amendment requires the imposition of a "substantial burden" on a plaintiff's exercise of his

religion. *Welch v. Spaulding*, 627 F. App'x 479, 485 (6th Cir. 2015). Similarly, the Religious Land Use and Institutionalized Persons Act (RLUIPA) prohibits the governmental imposition of a "substantial burden on the religious exercise" of an inmate unless the government establishes that the burden furthers a "compelling governmental interest" through the "least restrictive means[.]" 42 U.S.C. § 2000cc-1(a).

Here, Plaintiff's First Amendment free-exercise claim, as well as any RLUIPA claim, fail because the allegations are vague and conclusory and Plaintiff does not even identify his religion. Thus, these claims will also be dismissed for failure to state a claim upon which relief may be granted.

### 3. MCDC Official Rebecca Webster

Plaintiff alleges that Defendant Webster interfered with his ability to access the courts by refusing to notarize certain documents and losing court mail. He alleges that this forced him to file a late motion, presumably in his then pending state-court criminal action.

#### a. Legal Mail

At this preliminary stage, the Court will allow a First Amendment claim to proceed against Defendant Webster based upon Plaintiff's allegations that she repeatedly lost Plaintiff's legal mail.

#### b. Denial of Access to the Courts

This claim must be dismissed for failure to state a claim upon which relief may be granted for the same reason that Plaintiff's identical claim against Defendant Finch was dismissed - because it is clear that Plaintiff was represented by counsel in his state-court criminal proceedings.

### 4. Nurse Amber Brown

Plaintiff alleges that Defendant Brown ignored his painful hernia and "even discontinued IBprofin for pain" in August 2023. He also alleges that she changed his "mental health meds

without warning causing bad side effects." Plaintiff asserts that these allegations show that Defendant Brown was deliberately indifferent to his serious medicals and that she retaliated against him.

### a. Deliberate Indifference to Serious Medical Needs

Plaintiff alleges that Defendant Brown ignored his painful hernia and discontinued his pain medication in August 2023 while he was incarcerated as pretrial detainee at MCDC.

"The Sixth Circuit used to analyze pretrial detainees and convicted prisoners' of deliberate indifference the same under the standard from *Farmer v. Brennan*, 511 U.S. 825 (1994)." *Little v. City of Morristown*, Nos. 23-5302/5303, 2024 U.S. App. LEXIS 8699, at *5 (6th Cir. Apr. 9, 2024). The *Farmer* standard has two parts: (1) an objective component which requires the existence of a "sufficiently serious" medical need, *see*, *e.g.*, *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); and (2) a subjective component which requires a plaintiff to show that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety," *Farmer*, 511 U.S. at 837. However, in *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (2021), the Sixth Circuit modified the subjective component of the standard for pretrial detainees reducing the level of mental culpability with which a defendant must act from "knowing" to "reckless disregard." *Id.*; *see also Grote v. Kenton Cnty.*, 85 F.4th 397, 405-06 (6th Cir. 2023) (discussing *Brawner*).

Upon consideration, <u>the Court will allow a Fourteenth Amendment claim for deliberate indifference to a serious medical to proceed against Defendant Brown in her individual capacity based upon Plaintiff's allegations regarding his hernia</u>.

The Court, however, will dismiss Plaintiff's claims regarding his mental health needs for failure to state a claim upon which relief may be granted. Although Plaintiff does not indicate whether he was a convicted prisoner or a pretrial detainee when Defendant Brown allegedly

changed his mental health medications, Plaintiff's allegation is too vague to satisfy the objective component of the standard which remains the same under both the Eighth and Fourteenth Amendments. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

### b. Retaliation

As stated above, to succeed on a First Amendment retaliation claim, a plaintiff must show that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Plaintiff's allegations against Defendant Brown do not satisfy any of these three prongs. Thus, the Court will dismiss Plaintiff's retaliation claim against Defendant Brown for failure to state a claim upon which relief may be granted.

### 5. Deputy Bryan Pesis

Finally, the Court turns to Plaintiff's allegations against Defendant Pesis. Plaintiff alleges that Defendant Pesis "committed clear perjury" and "destroy[ed] material exculpatory evidence which would exonerate me from the Commonwealth's 'theory.'" Plaintiff states that there is extensive proof of these wrongful actions in "the record and the transcripts." He further states, "It is always against policy, and the law, to perjure testimony and falsify evidence, which was directly material to my defense. Plaintiff indicates that these allegations show that Defendant Pesis engaged in prosecutorial misconduct and malicious prosecution.

### a. Perjury

It is well established that witnesses who testify at trial—whether government officials or lay witnesses—are entitled to absolute immunity from suit based on that testimony. *Briscoe v. LaHue*, 460 U.S. 325, 334-46 (1983) (holding that § 1983 does not authorize a plaintiff to assert a

claim against a government official for damages for giving false testimony as a witness at a trial or court hearing). Indeed, a government witness is entitled to testimonial immunity "no matter how egregious or perjurious that testimony was alleged to have been." *Moldowan v. City of Warren*, 578 F.3d 351, 390 (6th Cir. 2009) (citing *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999)). Thus, Plaintiff's perjury claim against Defendant Pesis fails to state a claim upon which relief may be granted.

### b. Destruction of Exculpatory Evidence

As to Plaintiff's other claim against Defendant Pesis, in *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). The duty to disclose exculpatory evidence is not limited to prosecutors; police officers share an analogous duty to disclose such evidence to the prosecutor's office. *Moldowan*, 578 F.3d at 381. A *Brady* violation has three components: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1102 (6th Cir. 2022) (alteration in original) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). To be exculpatory, the evidence must be favorable to the defendant in a way that is apparent to law enforcement. *Moldowan,* 578 F.3d at 388.

Here, Plaintiff's *Brady* claim based upon the alleged destruction of evidence by Defendant Pesis fails because he does not allege what exculpatory evidence was destroyed. It is well-established that conclusory allegations are insufficient to state a civil-rights claim under § 1983. S*ee Moldowan,* 578 F.3d at 390-391 (dismissing malicious prosecution claim where the plaintiff

13

made only vague and conclusory allegations of false evidence); *Grogg v. Tenn.*, No. 2:15-CV-299-JRG-MCLC, 2018 U.S. Dist. LEXIS 109741, at *18 (E.D. Tenn. July 2, 2018) (dismissing *Brady* claim based upon officers' destruction of evidence because the plaintiff failed to allege what exculpatory evidence was withheld); *see also Iqbal*, 556 U.S. at 681 (holding formulaic and conclusory recitations of the elements of a claim which are not supported by specific facts are insufficient to state a plausible claim for relief).

Thus, this claim will also be dismissed for failure to state a claim upon which relief may be granted.

### C. Injunctive Relief

Plaintiff seeks injunctive relief to stop MCDC jail officials from "opening his legal" and "hampering his court filings." Because the record reflects that Plaintiff has been transferred to another facility, his request for injunctive relief must be denied as moot. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("[T]o the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail."); *see also Parks v. Reans*, 510 F. App'x 414, 415 (6th Cir. 2013) ("A prisoner's request for injunctive and declaratory relief is moot upon his transfer to a different facility.")

### IV.

For the foregoing reasons, the Court will allow First Amendment legal mail claims to proceed against Defendants Finch and Webster in their individual capacities and a Fourteenth Amendment claim for deliberate indifference to Plaintiff's serious medical needs to proceed against Defendant Brown in her individual capacity regarding Plaintiff's hernia. In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

15

**IT IS ORDERED** that all other claims set forth in the complaint are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim upon which relief may be granted.

Because no claims remain against them, the **Clerk of Court** is **DIRECTED to terminate Defendants J. Scarborough and Bryan Pesis as parties to this action**.

The Court will enter a separate Service and Scheduling Order to govern the claims it has allowed to proceed.

Date: October 8, 2024

*[Signature]*

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
     Defendants Finch, Webster, and Brown
     Meade County Attorney
4414.011