**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

**CIVIL ACTION NO. 3:24-CV-334-JHM**

**DANIEL R. CLEMANS**                                                                 **PLAINTIFF**

**v.**

**J. SCARBOROUGH,** *et al.*                                                          **DEFENDANTS**

### MEMORANDUM AND ORDER

This matter is before the Court on a motion by Plaintiff Daniel R. Clemans to compel the production of discovery pursuant to Federal Rule of Civil Procedure 37. [DN 88]. Defendants filed a response. [DN 89]. Plaintiff did not file a reply.

### I.

Plaintiff Daniel R. Clemans filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The Court conducted a review of the complaint and the amended complaint pursuant to 28 U.S.C. § 1915A and dismissed several of Plaintiff's claims but allowed the following claims to proceed: a Fourteenth Amendment claim for deliberate indifference to Plaintiff's medical and mental health needs against Defendant Amber Brown in her individual capacity; First Amendment legal mail claims against Defendants Brandon Finch and Rebecca Webster in their individual capacities; and First Amendment free-exercise and RLUIPA claims against Defendant Finch in his individual capacity. [DN 11, DN 25]. All of these Defendants are employees of Meade County Detention Center ("MCDC"). Subsequently, the Court allowed Plaintiff to file a second amended complaint to assert a claim against Meade County for failure to train its employees.

**II.**

Trial courts have wide discretion in dealing with discovery matters. *See S.S. v. E. Ky. Univ.*, 532 F.3d 445, 451 (6th Cir. 2008) (quoting *Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1240 (6th Cir. 1981)). The "scope of discovery" encompasses "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In analyzing proportionality, the Court must consider the need for the information sought based upon "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

**III.**

The difficulty in determining the proper scope of discovery in the present case is the fact that the parties disagree on what claims remain. When the Court permitted Plaintiff to file a second amended complaint to assert a failure to train claim against Meade County, the Court did not articulate for whom Meade County could potentially be liable with respect to its alleged failure to train—the MCDC, the Meade County Sheriff's Office ("MCSO"), or both. [DN 36]. Considering Plaintiff's discovery requests and Defendants' responses, the Court believes clarification is necessary.

A review of Plaintiff's second amended complaint reflects that Plaintiff sued Meade County for its failure to train *both* MCSO deputies and MCDC staff. *See* [DN 37 at 2–3]. In his second amended complaint, Plaintiff states:

> As this Honorable Court is already privy to several MCSD employees whose Constitutional-violation claims are already moving forward after prescreening (Brandon Finch, Rebecca Webster, Amber Brown) against them, there is also Sheriff Philip Wimpee, Ray Whited, and Bryan Pesis, all of employed at MCSD, all of which have been failed to be trained by the municipality/entity, MCSD, all of which have "come in contact" with Plaintiff and contributed to civil rights violations.

2

[*Id.* at 2].  Plaintiff further states: "[t]here are many cases in caselaw proving MCSO have unlawfully and unconstitutionally mishandled exculpatory evidence, fabricated evidence, failed to investigate, abused processes, which have led to unlawful convictions that some of which were life-sentences and that the same deficiency of employee training produced near identical due process violations in the present case."  [*Id.* at 3].

Plaintiff is correct that a failure to train officers can give rise to a § 1983 action against the municipality or county if the inadequate training amounts to deliberate indifference to the rights of the people the officers interact with.  *City of Canton v. Harris*, 489 U.S. 378, 379 (1989).  But both for official and individual capacity suits, there must be an underlying constitutional violation by an officer for there to be liability for failure to train.  *Smith v. Gallia Cnty. Jail*, No. 21-3620, 2022 WL 102965, at *1 (6th Cir. Jan. 11, 2022); *Hunt v. Applegate*, No. 95-1062, 1996 WL 428399, at *2 (6th Cir. 1996).  "No constitutional violation means no municipal [or county] liability."  *Thomas v. City of Columbus, Ohio*, 854 F.3d 361, 367 (6th Cir. 2017) (citation omitted); *see also North v. Cuyahoga Cnty.*, 754 F. App'x 380, 389 (6th Cir. 2018) ("There must be a constitutional violation for a § 1983 claim against a municipality to succeed—if the plaintiff has suffered no constitutional injury, his *Monell* claim fails").

In his complaint and amended complaints, Plaintiff has not sufficiently pleaded constitutional deprivations caused by Deputy Pesis, Deputy Whited, or Sheriff Wimpee to state a claim for relief.

**A.  Bryan Pesis**

On initial review, the Court dismissed Plaintiff's claims against former sheriff deputy Bryan Pesis for perjury, destruction of *Brady* material, and malicious prosecution.  [DN 11, DN 25, DN 36, DN 54].  The Court also denied Plaintiff's motion for leave to amend the complaint to state individual-capacity claims against Deputy Whited related to his grand jury testimony.  [DN 54].  As such, with

respect to Pesis and Whited, Plaintiff has not sufficiently alleged an underlying constitutional deprivation.

### B. Sheriff Philip Wimpee

Similarly, the Court denied Plaintiff's motion for leave to amend the complaint to state individual capacity claims against Sheriff Wimpee. [DN 54]. In his second amended complaint, Plaintiff states that Sheriff Wimpee violated his rights as "director of [MCSO] employees." [DN 37 at 4]. However, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors. *Monell v. Dep't of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "[P]roof of personal involvement is required for a supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Id.* at 576; *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 2009). Here, in his second amended complaint, Plaintiff simply asserts that Sheriff Wimpee is the director of MCSD employees and that had he and his staff been trained via policymakers, Plaintiff's constitutional rights would not have been violated. [DN 37 at 4].

Furthermore, assuming for purposes of this case that Sheriff Wimpee is the policymaker in charge of training at the MCSO, a defendant cannot be *individually* liable based on his failure to train or supervise. *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 646–48 (6th Cir. 2012). The Sixth Circuit has found that an attempt to hold an officer liable in his *individual* capacity for his "alleged failure to adequately train employees . . . 'improperly conflates a § 1983 claim of individual supervisory

liability with one of municipal liability.'" *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (citation omitted). *See also Barnett v. Christian Cnty. Jail*, No. 5:25-CV-P55-JHM, 2025 WL 2422631, at *3 (W.D. Ky. Aug. 21, 2025).

In light of the above discussion, Plaintiff failed to set forth sufficient facts to establish a violation of his constitutional rights by Pesis, Whited, or Wimpee. "No constitutional violation means no municipal [or county] liability." *Thomas*, 854 F.3d at 367. Thus, Plaintiff has failed to allege sufficient facts that Meade County failed to train its MCSO staff.

**IV.**

Having now clarified that the failure to train claim against Meade County stems only from the alleged constitutional deprivations by MCDC staff, the Court will proceed to address Plaintiff's motion to compel.

**A. Request No. 1**

Plaintiff sought the production of the MCSO funding policies, procedures, decisions, and amounts; the names and contact information of the decision-makers as of January 1, 2010, through January 10, 2022; and a summary of customs and norms outside of the above policies. In response to the request, the County Defendants answered:

> The office of the Meade County Sheriff's Office is funded through the collection of property taxes for Meade County, along with any funds provided by Meade County Fiscal Court. The "Decision Maker" for the Office of the Meade County Sheriff is the elected Sheriff, currently Sheriff Phillip Wimpee.

[DN 89 at 2].

Because the failure to train claim is now limited to MCDC, Plaintiff's objection to Defendants' response to Request No. 1 is **OVERRULED**.

5

**B.  Request No. 2**

Plaintiff requested the employment records, training records, certificates of completion, and disciplinary records of Meade County employees: Sheriff Wimpee, Deputy Whited, and Deputy Pesis, as of January 10, 2022.  Plaintiff also sought any Meade County employee, officer, or deputy with accident reconstruction training.  In response to the request, the County Defendants answered:

> Sheriff Phillip Wimpee, Deputy Ray Whited and Bryan Pesis are not parties to this action and their personnel files are irrelevant to any claim asserted by Plaintiff.  Also, there is no list of Meade County Sheriff's Department employees, officers, and/or deputies with Accident Reconstruction Training and/or Certification.

[*Id*. at 3].

Because the failure to train claim is now limited to MCDC, Plaintiff's objection to Defendants' response to Request No. 2 is **OVERRULED**.

**C.  Request No. 4**

Related to Request No. 2, Plaintiff requests incident reports of Meade County's employees in the MCSO pertaining to "any police misconduct, negligence, malicious prosecution claims, or malfeasance reported by citizens within January 1, 2010, through January 10, 2022."  Because the failure to train claim is now limited to MCDC, Plaintiff's objection to Defendants' response to Request No. 4 is **OVERRULED**.

**D.  Request No. 3**

Plaintiff sought the "criminal convictions versus dismissal rate as of January 22, 2024" in Meade County.  In response to this request, Defendants responded "This information is unavailable." [*Id.*].  Plaintiff maintains that this information will be utilized as statistical proof of Meade County's untrained/ill-trained employees' initiation of charges versus dismissals and is easily retrievable for Defendants.

The Court understands that Plaintiff is requesting this statistical information be generated by Defendants. However, "Fed. R. Civ. P. 34 does not require a party to create responsive documents if they do not exist in the first instance." *Payless Shoesource Worldwide, Inc. v. Target Corp.*, No. 05-4023, 2008 WL 973118, at *4 (D. Kan. Apr. 8, 2008). "[T]he Court cannot compel a party to produce documents that do not exist" or that are not under the party's control. *Id.*; *Atcherley v. Clark*, No. 1:12CV00225 LJO DLB, 2014 WL 4660842, at *4 (E.D. Cal. Sept. 17, 2014) ("Parties are not required to create documents in response to requests for production. If a requested document does not exist, the responding party's obligation ends.").[1] Furthermore, even if this statistical information exists in some form, it is not in the custody or control of Meade County. *See Roby v. Bloom Roofing Sys., Inc.*, No. 22-10622, 2023 WL 373603, at *1 (E.D. Mich. Jan. 24, 2023) ("[T]he Court cannot compel that party to provide information they do not have nor compel production of documents that do not exist.").

As such, Plaintiff's objection to Defendants' response to this request is **OVERRULED**.

**E. Request No. 5**

As a result of this motion to compel, Defendants supplemented its answer to this discovery request. Accordingly, Plaintiff's objection to this response is **MOOT**.

**F. Requests No. 6, No. 7, No. 8**

Plaintiff requests an "attorney-visit log," a "clergy-visit log," and "a legal-mail log" of Daniel Clemans while housed at MCDC from January 12, 2022, through January 22, 2024. In response to Requests 6 and 7, Defendants answered: "The document does not exist." In response to Request 8,

---

[1] *See also Allison v. Mavic, Inc.*, No. 5:13-CV-180-DCR-REW, 2014 WL 12650099, at *3 (E.D. Ky. Oct. 30, 2014) (citing *Dodson v. Wilkinson*, No. 2:03-CV-0944, 2005 WL 2875388, at *2 (S.D. Ohio Nov. 2, 2005)); *Kouekassazo v. City of Columbus*, No. 2:19-CV-1578, 2020 WL 1891697, at *4 (S.D. Ohio Apr. 16, 2020), *aff'd sub nom. Kouekassazo v. City of Columbus*, No. 20-3502, 2021 WL 1960955 (6th Cir. Jan. 19, 2021) ("[T]he Court cannot order Defendants to disclose information that they do not have no matter how strong or sincere [plaintiff's] belief is that they do.").

7

Defendants stated: "The Meade County Detention Center does not maintain a log of incoming or outgoing mail between attorneys and inmates." [DN 89 at 5].

In his motion to compel, Plaintiff contends that because MCDC is a holding facility for the Kentucky Department of Corrections ("DOC"), it is required to have the referenced logs under DOC policy, and the Court should order these produced or take judicial notice of the missing evidence. Defendants did not address Plaintiff's argument that they are required to maintain these logs under DOC policy.

"[T]he Court cannot compel Defendant to produce documents or items that it does not have or that do not exist." *Allison*, 2014 WL 12650099, at *3; *see also Payless Shoesource Worldwide, Inc.,* 2008 WL 973118, at *4; *Kouekassazo*, 2020 WL 1891697, at *4 ("[T]he Court cannot order Defendants to disclose information that they do not have no matter how strong or sincere [plaintiff's] belief is that they do.").

The Court credits Meade County and counsel's representations. With respect to whether this evidence should have been retained, Plaintiff has not identified the specific DOC policy or procedure that requires maintenance of such records. As such, Plaintiff's objection to Defendants' response to these requests is **OVERRULED**.

**G. Request No. 12**

Plaintiff sought "MCDC Funding Allocation for operating and for training" and a "list of names and contacts of the Decision-Makers for such in Meade County." Defendants answered: "Objection. This requested information is irrelevant to the allegations of Plaintiff's Complaint and is not calculated to lead to discoverable information." [DN 89 at 5].

In his motion to compel, Plaintiff argues that a simple chart or print out of Meade County's spending allocations will demonstrate this information, and this discovery will reflect Meade

County's pattern of lack of specific allocation of funds to improve its employees' trainings. In Defendants' response to the motion to compel, they do not expand on their discovery answer. [*Id.*].

As discussed above, Plaintiff is suing Meade County for its failure to train MCDC staff. *See* [DN 37 at 5]. As such, funding records of MCDC may be relevant to the claims brought by Plaintiff and may bear on whether Plaintiff can prove deliberate indifference for purposes of a failure to train claim. *James v. Cuyahoga Cnty.*, 648 F. Supp. 3d 897, 907 (N.D. Ohio 2022) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted)). Meade County has not adequately explained to Plaintiff or the Court why the information is irrelevant to the failure to train claim against Meade County and why the information is not calculated to lead to discoverable information. *See*, *e.g.*, *Hamblin v. Wilson Cnty.*, No. 3:21-0816, 2022 WL 18635844, at *2 (M.D. Tenn. Nov. 30, 2022) ("[w]hen the information sought appears to be relevant, 'the burden shifts to the party resisting discovery to show, with specificity, why the requested discovery is not proportional to the needs of the case'").

Upon consideration, Plaintiff's objection to Meade County's response to Request No. 12 is **SUSTAINED**. **No later than November 3, 2025**, **Meade County shall review the disputed discovery request and shall submit the records or a response to Request No. 12 that is sufficiently particularized.**

### H. Request No. 15

Plaintiff requested "ALL cell-kiosk communications/announcements to inmates from [MCDC] Jail Staff as of June 25, 2023, and as of June 25, 2024." In response to the discovery requests, Defendant stated: "Objection. This requested information is irrelevant to the allegations of Plaintiff's complaint and is not calculated to lead to discoverable information." [DN 89 at 5].

In his motion to compel, Plaintiff maintains that this information will show how Defendants "spitefully and violatively displayed and acted more oppressing to Plaintiff (and all other inmates) over time," will show which Defendant typed the communications, and will directly show that jail staff would "'no longer notarize legal documents,' 'no more copying legal documents,' and other various medical, mental health, and religious oppressions." [DN 88 at 7]. In response to the motion to compel, Defendants represent that Plaintiff "has not identified any evidentiary reason for the production of the requested documentation" and that all of Plaintiff's kiosk communications with MCDC are contained in his inmate file, which was produced with Defendants' discovery responses on May 9, 2025. [DN 89 at 5].

Plaintiff has not articulated how a copy of *every* cell-kiosk communication to *every* inmate from MCDC staff "as of" of those dates is relevant to the claims asserted by Plaintiff against these individual Defendants. Additionally, Plaintiff has not mentioned his failure to train claim against Meade County in demonstrating cause for production of this information. As such, Plaintiff's motion to compel the production of Request No. 15 is **OVERRULED**.

### I. Requests No. 20, No. 21, and No. 22

Plaintiff sought copies of all correspondence between him and the Meade Circuit Court Clerk to include only the first page or other file-stamped pages of *pro se* motions filed while housed at MCDC from January 12, 2022, through September 24, 2024. Plaintiff also requested a copy of a letter typed by the Meade Circuit Court Clerk and sent to Plaintiff regarding his *pro se* appeal notices and designations of records, as well as copies of "Notices of Appeal" and "Designation of Record" filed in the Meade Circuit Court in April 2024. In response to these requests, Defendants answered: "This requested documentation is not in possession of these Answering Defendants and is as readily available to Plaintiff as to them." [DN 89 at 5].

10

Plaintiff moves to compel the production of these documents maintaining that they "will demonstrate clear evidence of deficient training." Plaintiff further states that Defendants could just print them out and send them to him because they have more ease of access to these documents. In response to the motion to compel, Defendants state that their original response to Plaintiff's requests is accurate as they cannot produce what is not within their custodial control. [*Id.* at 5–6].

The Court agrees with Defendants. The motion to compel Requests No. 20, No. 21, and No. 22 is **OVERRULED.** Initially, Plaintiff is reminded that his failure to train claim is not against the Meade Circuit Court. All claims against the Meade Circuit Court and the Commonwealth of Kentucky were dismissed on initial review. [DN 11, DN 25]. As noted by Defendants, Meade County is not the employer of the Meade Circuit Court employees, nor is the Meade Circuit Court an agency of Meade County. Instead, Kentucky circuit court employees "are state officers whose duties are coextensive with the Commonwealth . . . ." Ky. Rev. Stat. § 30A.010.

**J. Request No. 23**

Plaintiff requested MCDC "notary log" for the period of his detention at the facility. In response, Defendant answered: "The Meade County Detention Center does not maintain a Notary log." [DN 89 at 6].

Plaintiff moves to compel the production of this log because he represents that he personally saw this log used, and he was denied notary services while others received it. In response, Defendants maintain that Plaintiff's inmate file has been produced and contains two references to Plaintiff's need for a notary and MCDC staff responded that he may access "an outside notary" which Plaintiff did. [*Id.* at 7].

The Court credits Defendants and counsel's representations that this log does not exist. "[T]he Court cannot compel Defendant to produce documents or items that it does not have or that do not

11

exist." *Allison*, 2014 WL 12650099, at *3.  As such, Plaintiff's objection to Request No. 23 is **OVERRULED**.

### K.  Request No. 24

Plaintiff requested disclosure of the funding amount for training, procedures, and duties of the Meade County Circuit Clerk and the names and contact information of the decision-makers for the Clerk's Office.  Defendants responded: "This requested documentation is not in possession of these Answering Defendants and is as readily available to Plaintiff as to them."  [DN 89 at 7].

Plaintiff argues that these documents will show Meade County's allocation of funding for training for its court employees and demonstrate failure to train with respect to legal mail.  Plaintiff indicates that these documents are in the possession of Meade County.  In response, Defendant notes that they do not have access to the requested information because the Meade County Circuit Court Clerk is an elected official controlled by the Administrative Office of the Court, Commonwealth of Kentucky, and is not subject to the authority of Meade County or any other named Defendant.  [*Id.*].

The Court agrees with Defendants.  As stated above, Plaintiff's failure to train claim is not against the Meade Circuit Court.  All claims against the Meade Circuit Court and the Commonwealth of Kentucky were dismissed on initial review.  [DN 11, DN 25].  Meade County is not the employer of the Meade Circuit Court employees, nor is the Meade Circuit Court an agency of Meade County.  Ky. Rev. Stat. § 30A.010 provides that Kentucky circuit court employees "are state officers whose duties are coextensive with the Commonwealth."

Accordingly, Plaintiff's objection to Request No. 24 is **OVERRULED**.

**V.**

**IT IS ORDERED** that the motion by Plaintiff Daniel R. Clemans to compel the production

of discovery pursuant to Federal Rule of Civil Procedure 37 [DN 88] is **GRANTED in part and**

**DENIED in part**.

Date:   October 22, 2025

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:      Plaintiff, *pro se*
         Counsel of Record
4414.014